# EXHIBIT A

STEPHEN F. HENRY, ESQ.
STATE BAR # 142336
2625 Alcatraz Avenue, # 615
Berkeley, California 94705
Telephone: (510) 898-1883
Facsimile (510) 295-2516
shenry@SHenrylaw.com
Attorney for Plaintiff

**FILED**
San Francisco County Superior Court

JAN 3 1 2017

CLERK OF THE COURT
BY: _____
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

UNLIMITED CIVIL JURISDICTION

| | |
|---|---|
| SEVA SAFRIS, an individual, ALEX YURYEV, an individual<br><br>Plaintiff,<br><br>vs.<br><br>VNUE, INC., a Nevada corporation, MATTHEW CARONA, an individual, and DOES 1 to 50,<br><br>Defendants. | Case No. **CGC-17-556777**<br><br>**PLAINTIFF'S COMPLAINT FOR DAMAGES FOR**<br>1. Fraud and Deceit<br>2. Violation of Penal Code<br>3. Aiding and Abetting<br>4. Negligent Misrepresentation<br>5. Unfair Competition<br>6. Breach of Contract<br>7. Breach of Implied Covenant<br>8. Quantum Meriut<br>9. Violation of Labor Code<br><br>**AND DEMAND FOR JURY TRIAL** |

**BY FAX**
ONE LEGAL LLC

Plaintiffs Seva Safris and Alex Yuryev ("Plaintiffs"), for causes of action against defendants Vnue, Inc. ("Vnue"), Matthew Carona ("Carona"), and Does One through Fifty, inclusive (collectively "Defendants"), alleges in this Complaint for Damages ("Complaint") as follows:

**THE PARTIES**

1. Seva Safris is a resident of the State of California, County of San Francisco.

2. Alex Yuryev is a resident of the State of Minnesota.

3. Vnue, Inc. is a corporation incorporated in the State of Nevada and doing business in New York and California.

CASE NO.                                1        COMPLAINT FOR DAMAGES

4. Matthew Carona is a resident of the State of Massachusetts.

5. Plaintiffs are ignorant of the true names and capacities of the defendants sued in this litigation as Does One through Fifty, inclusive and, as a result, sue these defendants by these fictitious names. Plaintiffs will amend this Complaint to allege the true names and capacities of these defendants once they have been ascertained. Plaintiffs are informed and believe and thereupon allege that each of the fictitiously named defendants is in some manner responsible for the injuries and damages to Plaintiffs alleged in this litigation.

6. Plaintiffs are informed and believes and thereupon allege that at all times relevant to this litigation, defendants, and each of them, were the agents, servants, and employees of their codefendants, and that these defendants, in doing the things mentioned in this Complaint, were acting within the course and scope of their authority as such agents, servants, and employees, and were acting with the permission and consent of their codefendants.

## JURISDICTION AND VENUE

7. Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 6 above, as well as facts currently unknown.

8. Jurisdiction over the defendants, and each of them, exists because each of the defendants named in this litigation have been present and operating within the jurisdictional limits of the State of California. Subject matter jurisdiction within the Unlimited Division of the Superior Court exists because the amount in dispute exceeds $25,000.

9. Venue is proper because the contractual relationship between Plaintiff Safris and defendants, and each of them, that gave rise to some of the claims in this litigation existed within this judicial district and acts and omissions complained of in this litigation took place here. Venue is also proper because acts and omissions that occurred outside of the above employment relationship and are complained of in this litigation took place within this judicial district.

## FACTUAL ALLEGATIONS

10. Plaintiff Safris began working for Defendant Vnue on a consulting basis through a consulting firm.

CASE NO.                                   2            COMPLAINT FOR DAMAGES

11. In August 2015, Safris had a phone call with Defendant Carona in which Carona expressed a desire for Safris to work for Vnue full-time as Chief Technology Officer at a compensation level of approximately $200,000 plus health insurance, a bonus structure, and company-paid housing. Carona also promised that the company would cover Mr. Safris' move to New York City.

12. In September 2015, Carona offered to pay Safris's consulting fees directly through the end of the year, and then begin a contract for the Chief Technology Officer position on January 1, 2016. Safris agreed, and expected to be paid his owed consulting fees of $30,000 as well as his salary as Chief Technology Officer beginning January 1, 2016.

13. Safris agreed to become Chief Technology Officer beginning January 1, 2016, and engaged in substantial work for Vnue as Chief Technology Officer, based on the assurances by Carona that he would be paid his full salary and benefits.

14. However, Vnue did not pay Safris his full consulting fees or begin paying Safris his salary and benefits beginning January 1, 2016. Instead, Vnue began a pattern of paying Safris small amounts of what he was owed.

15. On March 11, 2016, Safris participated in a telephone meeting with Carona and others. Carona was elated with news that an SEC audit of Vnue was almost finished, and that the company would have money to pay everyone with which it had contracted. Carona stated "but you won't all get ALL of your money right away -- it would seem suspicious that all-of-a-sudden the company unloads heaps and heaps of cash -- you will all get your money, but it may take a month or so."

16. After several months of not receiving payment for his extensive work for Vnue, Safris was under severe stress and became severely sick with shingles in early May, 2016. The shingles resulted in part from a weakened immune system due to the stress of not being paid for his work. While in the middle of recovery, Safris continued to work for Vnue but also expressed to Carona that he could not continue working without being paid.

17. Carona engaged Zach Bair to take over the company as Chief Executive Officer. Carona assumed Chief Operating Officer responsibilities. Carona expressed to Safris and Yurvev that once Bair was on board, everyone would start to get paid quickly.

18. In the summer of 2016, Carona and Safris had numerous conversations in which Carona stated that the payments would increase, and that Safris should expect his full salary pursuant to the agreed-upon contract by August.

19. In the interim, Safris worked extensive hours for Vnue, as Carona announced that the company had to release its iOS app for investors to gain confidence, and thus invest money into the company. Safris learned that Vnue was also going through another SEC audit at this time, and was listed as "delinquent" on OTCQB. Carona told Safris that his priority was to get the company current. Once current, Carona promised that Safris and Yuryev would get paid.

20. On August 7, 2016, Safris sent an email to Bair and Carona saying that he believed there were serious communication issues with the company. The email stated, in part, "I have been absorbing this stress for too long now. It's expressed in me as stress because my intuition is telling me that there is a problem here. Well, so here it is, this email: we have a problem and we need to talk."

21. On August 8, 2016, Safris received a reply from Bair asking to have a call. Bair and Safris talked and Bair stated that he would find a solution and that he would be in touch with Safris directly soon. Bair never communicated with Safris again.

22. Carona and Safris spoke, and after Safris stated that he was in debt and needed to be paid, Carona agreed to send Safris $8,000. He did not send the money.

23. On September 4, 2016, Carona spoke with Safris and announced that Safris had been put on furlough.

24. Safris and his wife moved back to San Francisco on November 1, 2016.

25. In October 2016, Safris was forced by the economic situation in which Defendants had placed him to withdraw his retirement funds with an attendant penalty.

26. On November 15, 2016, Carona called Safris to request that he update the iOS app on iTunes Connect so it could be shown to investors. Safris asked that Bair call him. Carona told Safris that he would ask Bair to call him, but cannot guarantee that Bair will call.

27. On November 22, 2016, Carona called Safris to provide an update. Carona told Safris that all the work he, Yuryev and others had done would not be used by Vnue, as Bair had different plans for the company. Carona then stated that the company is going to be effective shortly, and that more investment money will come through. Carona requested Safris to update the app again, and offered Safris $250 to do it. Safris offered to update the app if Bair would call him but Carona stated that Bair would not call. Carona told Safris that Bair had been working on building volume for trading the stock. Once the company becomes effective, the stock would be sold and the company would fold.

28. On July 25, 2015, Plaintiff Yuryev and Defendant Carona signed a contract for one year's employment of Yuryev. During a phone conversation with Yuryev, Carona claimed that the company had over five million dollars in investment money secured.

29. Yuryev agreed to perform substantial work for Vnue based on the assurances by Carona that he would be paid his full salary and benefits.

30. On October 15, 2015, Vnue failed to pay Yuryev for the first time.

31. On October 22, 2015, during a phone conversation Carona assured Yuryev that delays in payment of his salary were caused by Vnue's temporary inability to access investment money, and that this issue would be resolved as soon as possible.

32. On October 31, 2015, Yuryev received no salary and thereafter began receiving periodic payments that represented less than the amount he was owed.

33. On December 2, 2015, Yuryev wrote to Carona:

Hey Matthew,

Can we schedule a quick call for tomorrow to talk about finances, if you have time? I feel like I'm losing track of what's going on there lately. I would really appreciate you filling me in!

Thanks,

Alex

1    34.    On December 3, 2015, Carona wrote:

2    Hi Alex,

3    Sorry for the lack of communication and basically going dark for the last 2 weeks.

4    How does 2:30pm EST work for you today? I can give you a full download on

5    everything. At any point if you are losing track of whats going on, please feel free to call my cell.

6    Text me, etc and then proceed to speak openly about anything. I truly appreciate your support

7    and hanging tough over the last 60 days.

8    Again, sorry I have been a dick and looking forward to bringing you up to speed.

9    All The Best,

10   Matthew

11   35.    In a related phone conversation, Yuryev was assured by Carona that access to

12   funding was imminent and that all accumulated debt would be paid back by the end of the 2015

13   calendar year.

14   36.    On January 12, 2016, Carona wrote to Yuryev:

15   Hey hey - just wanted to give you a quick update on the financial side of the company.

16   The good news is that today we will receive the confirmed Q3 financials and be able to put out

17   the 10Q that our financials are up to date. Then we take the 10Q along with our Q3 numbers and

18   send to SEC for review. Once they approve (quick turn around) we become a fully reporting

19   company and our symbol goes from delinquent to CURRENT or REPORTING. The milli second

20   that happens we are able to access our entire equity line of 5mm

21   37.    Yuryev did not receive his salary.

22   38.    On January 20, 2016, Carona wrote to Yuryev:

23   S1 is signed and going in

24   39.    Yuryev still did not receive his current salary or owed salary.

25   40.    On March 9, 2016, Carona wrote to Yuryev:

26   btw, we are EFFECTIVE

27   next day or so everything will really begin

28   41.    Yuryev did not receive his salary in March or April.

42. On April 29, 2016, Carona wrote to Yuryev:

also good news is that when all the shares start trading hands you will receive 7.5mm please dont share that with anyone --

which is 1% of the company equity in percentages

also when the stock goes back up to .031 where we started when we did the reverse last june your shares will be valued at just under 235k - they will be locked up for 1 year but they are all yours

its already in motion for the change of executives and share schedule etc - money comes in on Wednesday - the investor took a leap of faith before we even signed a term sheet and paid the lawyer retainier (sic) to get this thing moving. He sent me a text two hours ago saying Wednesday money will be transferred

next week is a HUGE week

we will all be jumpoing (sic) on a call

i have been on calls doing my due dillegence (sic) and negotiating (sic) hard to get what we need to live for next 30-60 days.

We have a plan to raise 2mm and already Gary (new investor) has said he will put in another 100k + two of his guys already want in as well to start getting other investors in above 250k so we can get to 1mm fast. The reason 1mm is a crucial number is so that Zach (new ceo) will have his milestone vestings chedule kick in and thus get everything he is owed much quicker

also so we can pay all bad debts - catch up on owed compensation (sic) and pick up two more people on Dev as we grow.

43. Nevertheless, Yuryev continued to receive no salary or reduced payments of salary and was never paid the full amount of his contract or the promised benefits.

## FIRST CAUSE OF ACTION

## FRAUD AND DECEIT

## (By Both Plaintiffs Against All Defendants and Does One through Fifty)

44. Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 43 above, as well as facts currently unknown.

45. Defendants made representations as described in paragraphs 10 to 43 above.

46. Said representations were false because Plaintiffs never received full compensation, or the opportunity to obtain full compensation, for their work as represented by Defendants. Defendants used the misrepresentations to induce Plaintiffs to change their employment, a result Defendants could not have achieved truthfully.

47. Defendants knew said representations to be false and intended to conceal the true facts from Plaintiffs to unlawfully persuade Plaintiffs, to their detriment, to change their employment and use their knowledge, contacts, skill and expertise to Defendants' benefit in developing Vnue as a business.

48. Plaintiffs relied upon the misrepresentations made to them, and did not know the true facts concealed from them, to their detriment.

49. Plaintiffs did not discover the fraud and deceit practiced upon them as set forth herein until they started their employment with Defendants, attempted to fulfill their responsibilities, continued to provide Defendants with valuable work, were not paid what they were owed, and thereby realized that Defendants' representations were false and that Defendants had concealed their true intent, including the intent to misappropriate their labor and expertise.

50. As a proximate result of the representations of Defendants to Plaintiffs as set forth herein, Plaintiffs have suffered and continue to suffer the loss of wages and benefits in an amount in excess $600,000 plus benefits and stock grants and options already granted to Plaintiffs by the Company, the precise amount of which will be proven at trial, as well as stock grants and options already granted to Plaintiffs by the Company, the precise amount of which will be proven at trial.

51. As a further direct and proximate result of Defendant's wrongful conduct, Plaintiffs have suffered extreme anguish, humiliation, and emotional distress, the extent of which is not fully known at this time, but the amount of damages are in excess of $500,000, the precise amount of which will be proven at trial.

52. Because the acts taken toward Plaintiffs were carried out by, condoned by and or ratified by managerial employees or managing agents acting in a deliberate, cold, callous,

CASE NO.                                              8                 COMPLAINT FOR DAMAGES

fraudulent, malicious, oppressive, and intentional manner in order to injure and damage Plaintiffs, Plaintiffs request the assessment of punitive damages against Defendant in an amount appropriate to punish and make an example of Defendant.

53. WHEREFORE, Plaintiffs request relief as hereinafter provided.

## SECOND CAUSE OF ACTION

## VIOLATION OF PENAL CODE SECTION 496(a)

**(By Plaintiff Safris Against All Defendants and Does One through Fifty)**

54. Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 51 above, as well as facts currently unknown.

55. Defendants' misrepresentations to Plaintiff Safris that he would be would be compensated for his work developing Vnue's products as outlined in paragraphs above herein constituted theft of labor under Penal Code section 484 insofar as Defendants have "knowingly and designedly, by...false or fraudulent representation or pretense, defraud[ed][Plaintiffs] of money [and] labor."

56. As a direct, foreseeable, and proximate result of Defendants' theft, Plaintiff have suffered and continue to suffer a loss not less than $400,000 plus benefits and stock grants and options already granted to Plaintiffs by the Company, the precise amount of which will be proven at trial.

57. Plaintiffs have been damaged as a result of the theft of their services and is entitled to treble damages pursuant to Penal Code section 496(a).

58. WHEREFORE, Plaintiffs request relief as hereinafter provided.

## THIRD CAUSE OF ACTION

## AIDING AND ABETTING FRAUD AND DECEIT

**(By Both Plaintiffs Against Defendant Vnue and Does One through Ten)**

59. Plaintiff incorporates by reference each of the allegations contained in paragraphs 1 through 56 above.

60. Carona and others represented to Plaintiffs that they would be properly compensated for the work performed under the parties' agreement and never told Plaintiffs that

CASE NO. 9 COMPLAINT FOR DAMAGES

they would not be paid the full amount agreed upon. Plaintiffs were deceived and said representations were false, and the true nature of Vnue's ability to pay salaries and benefits was concealed.

61. Carona and others used the misrepresentations and concealment to induce Plaintiff to work for Vnue without being fully and properly compensated.

62. Vnue and its officers and directors were on notice of Carona's and others' misrepresentations

63. Plaintiffs relied upon the misrepresentations made to them, and did not know the true facts concealed from it, to their detriment.

64. Plaintiffs did not discover the fraud and deceit practiced upon it as set forth herein until after entering into agreements with Vnue, expending funds to move, and performing valuable work for Vnue.

65. As a proximate result of Defendant Vnue's aiding and abetting of the fraud perpetrated by Carona and other officers and directors (collectively or individually) against Plaintiffs as set forth herein, Plaintiffs have suffered and continues to suffer losses not less than $400,000 plus benefits and stock grants and options already granted to Plaintiffs by the Company, the precise amount of which will be proven at trial.

66. WHEREFORE, Plaintiffs demand judgment against Defendant Vnue and Does One through Ten, and each of them, as set forth in this Complaint.

## FOURTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

**(By Both Plaintiffs Against Defendant Carona and Vnue and Does One through Ten)**

67. Plaintiff incorporates by reference paragraphs 1 to 64 inclusive of this Complaint as if fully set forth.

68. Defendants had a duty to investigate and know whether Vnue could properly compensate Plaintiffs for their work, which duty Vnue failed to honor to the detriment of Plaintiff.

69. In particular, Defendants made negligent misrepresentations by stating that

CASE NO.                                                10      COMPLAINT FOR DAMAGES

1  Plaintiffs would be paid for their work and that Vnue was receiving adequate funding to pay for
2  Plaintiffs' services

3      70.    Defendants' negligent misrepresentation was a proximate cause of the damages
4  that Plaintiffs suffered as set forth in the Complaint and not less than $400,000 plus benefits and
5  stock grants and options already granted to Plaintiffs by the Company, in an amount to be proven
6  at trial.

7      71.    WHEREFORE, Plaintiffs demand judgment against Defendants and Does One
8  through Ten, and each of them, as set forth in this Complaint.

## FIFTH CAUSE OF ACTION

## UNFAIR COMPETITION

**(Business & Professions Code § 17200 et seq.)**

**(By Plaintiff Safris Against Defendant Vnue and Does One through Ten)**

13      72.    Plaintiff incorporates by reference and realleges paragraphs 1 through 69,
14  inclusive, as though set forth fully herein.

15      73.    Defendant Vnue's aiding and abetting of fraud and deceit, negligence and
16  negligent misrepresentations as alleged by this Complaint, within the last four years, among
17  other wrongful, tortious and illegal acts and omissions constitute unfair business practices in
18  violation of the Unfair Competition Law, Business & Professions Code § 17200, et seq.

19      74.    As a result of Defendant Vnue's unfair business practices, Defendant Vnue has
20  reaped an unfair benefit at the expense of Plaintiff, and members of the public. Defendant
21  Vnue's unfair business practices constitute unfair competition and provides an unfair advantage
22  over Defendant Vnue's competitors. Defendant Vnue should be made to disgorge its ill-gotten
23  gains and restore such monies to Plaintiff Safris.

24      75.    Defendant Vnue's unfair business practices entitles Plaintiff Safris to seek
25  preliminary and permanent injunctive relief, including but not limited to orders that the
26  Defendant Vnue account for, disgorge monies made on the account for which they were unjustly
27  enriched.

28      76.

CASE NO.                             11      COMPLAINT FOR DAMAGES

## SIXTH CAUSE OF ACTION

## BREACH OF CONTRACT

### (By Both Plaintiffs Against Defendant Vnue and Does One through Fifty)

77. Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 75 above, as well as facts currently unknown.

78. Plaintiffs were in a business relationship with Defendant under a contract that was partly written, partly oral, and partly implied, as described in paragraphs above.

79. The terms of the contract relied on by Plaintiffs included but were not limited to payment of salary plus benefits and stock grants and options already granted to Plaintiffs by the Company.

80. Defendant breached its contract with Plaintiffs by failing to pay Plaintiffs all owed salary plus benefits and stock grants and options already granted to Plaintiffs by the Company.

81. Defendant have refused and continue to refuse to allow Plaintiffs earn the compensation, benefits, and stock grants and options already granted to Plaintiffs by the Company and to perform under this contract in the agreed on manner.

82. As a direct, foreseeable, and proximate result of Defendant's breach, Plaintiffs have suffered and continue to suffer a loss not less than $600,000 plus benefits and stock grants and options already granted to Plaintiffs by the Company, the precise amount of which will be proven at trial. Plaintiffs seek specific performance of the stock grants and options already granted to Plaintiffs by the Company and are ready, willing and able to perform at the time the contract was entered into and continue to be ready, willing and able to perform by paying for the stock options granted by the company.

83. WHEREFORE, Plaintiffs demand judgment against Defendant Vnue and Does One through Fifty, and each of them, as set forth in this Complaint.

## SEVENTH CAUSE OF ACTION

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

**(By Both Plaintiffs Against Defendant Vnue and Does One through Fifty)**

84. Plaintiffs incorporate by reference each of the allegations contained in paragraphs 1 through 82 above, as well as facts currently unknown.

85. As a result of the contractual relationship which existed between Plaintiffs and Defendant Vnue, as described above, the expressed and implied promises made in connection with that relationship, and the acts, conduct, and communications resulting in these implied promises, Defendant Vnue promised to act in good faith toward and deal fairly with Plaintiffs which required, among other things, that:

    i. Each party in the relationship must act with good faith toward the other concerning all matters related to the contractual relationship;

    ii. Each party in the relationship must act with fairness toward the other concerning all matters related to the contractual relationship;

    iii. Neither party would take any action to unfairly prevent the other from obtaining the benefits of the contractual relationship; and

    iv. Defendant would give Plaintiffs' interests as much consideration as it gave its own interests.

86. Defendant's termination of the contractual relationship was wrongful, in bad faith, and unfair, and therefore a violation of Defendant's legal duties. Plaintiffs further alleges that Defendant breached the covenant of good faith and fair dealing when it:

    i. Unfairly prevented Plaintiffs from obtaining the benefits of the contractual relationship;

87. Defendant's breach of the covenant of good faith and fair dealing was a substantial factor in causing damage and injury to Plaintiffs. As a direct and proximate result of Defendant's unlawful conduct alleged in this complaint, Plaintiffs have lost substantial contract benefits and have suffered other losses including loss of reputation, lost commissions, and other benefits in an

CASE NO.                                            13        COMPLAINT FOR DAMAGES

1  amount not less than $600,000 plus benefits and stock grants and options already granted to
2  Plaintiffs by the Company, the precise amount of which will be proven at trial. Plaintiffs seek
3  specific performance of the stock grants and options granted by the company and was ready,
4  willing and able to perform at the time the contract was entered into and continue to be ready,
5  willing and able to perform by paying for the stock options granted by the company.
6      88.  WHEREFORE, Plaintiffs demand judgment against Defendant and Does One
7  through Fifty, and each of them, as set forth in this complaint.

## EIGHTH CAUSE OF ACTION

## QUANTUM MERUIT

**(By Both Plaintiffs Against Defendant Vnue and Does One through Fifty)**

89.  Plaintiffs incorporate by reference paragraphs 1 to 87 inclusive, of this complaint as if fully set forth.

90.  Plaintiffs rendered work, labor, and services to Defendant Vnue at the special request of Defendant for which Defendant promised to pay Plaintiffs the reasonable value of such services.

91.  At all times herein mentioned, the above services were and are of a reasonable value to be proven at trial.

92.  No part of the above sum have been paid, notwithstanding that there is now due, owing, and unpaid from Defendant to Plaintiffs a sum to be proven at trial

93.  WHEREFORE, Plaintiffs demand judgment against Defendant and Does One through Fifty, and each of them, as set forth in this Complaint.

## NINTH CAUSE OF ACTION

## VIOLATION OF LABOR CODE SECTIONS

**(By Plaintiff Safris Against Defendant Vnue)**

94.  Plaintiff incorporates by reference each of the allegations contained in paragraphs 1 through 93 above, as well as facts currently unknown.

95.  At the time of Plaintiff's termination Plaintiff had accrued unpaid wages.

96.  Pursuant to Labor Code § 201, at the time Plaintiff's employment terminated,

CASE NO.                        14         COMPLAINT FOR DAMAGES

1  Defendant was obligated to pay Plaintiff wages earned and unpaid.  In violation of Labor Code §
2  201, Defendant failed to pay Plaintiff any of the amount of wages due and owing Plaintiff.
3  Although Plaintiff has demanded payment, Defendant has refused and continue to refuse to pay
4  Plaintiff the amount due and owing Plaintiff.

5       97.    Since the date of Plaintiff's termination of employment with Defendants, Plaintiff
6  has been available and ready to receive the amount of wages s due and owing Plaintiff.  Plaintiff
7  has not refused to receive any payment, nor has Plaintiff been absent from Plaintiff's regular
8  place of residence.

9       98.    Defendant's failure to pay plaintiff the wages due and owing Plaintiff was and has
10  been willful in that Plaintiff has made both verbal and written demand for this payment but
11  Defendant has refused to pay any part of the amount due and owing Plaintiff.

12       99.    Defendant's willful failure to pay plaintiff the wages due and owing Plaintiff
13  constitutes a violation of Labor Code § 203, which provides that an employee's wages will
14  continue as a penalty until paid up to 30 days from the time the wages were due.  Therefore,
15  plaintiff is entitled to a penalty in the amount of Plaintiff's wage rate multiplied by 30 days.

16       100.    Pursuant to Labor Code § 218.5, Plaintiff requests that the court award Plaintiff
17  reasonable attorney fees and costs incurred by Plaintiff in this action, as well as interest pursuant
18  to Labor Code § 218.6.

19  **PRAYER**

20  WHEREFORE, Plaintiffs prays for judgment against Defendants, and each of them, as
21  follows:

22       1.    For monetary damages against Defendants, and each of them, in an amount
23  sufficient to compensate Plaintiff for loss of income, loss of benefits, loss of stock grants and
24  options already granted to Plaintiff by the Company, loss of use, for emotional distress, and for
25  the injury and damage that Defendants have caused to Plaintiff's name and reputation;

26       2.    For specific performance of the stock grants and option agreements between
27  Plaintiff and Defendant such that Plaintiff receives all stock grants and options granted by the
28  company and is permitted to exercise same;

CASE NO.                              15      COMPLAINT FOR DAMAGES

3. For treble damages;

4. For punitive damages against Defendants in an amount sufficient to deter them from engaging in similar misconduct toward other employees, and to make an example of them to others who may otherwise be inclined to engage in such wrongful conduct;

5. For costs of suit incurred herein, including Plaintiff's reasonable attorneys' fees, expert witness expenses and fees, and other costs and expenses that Plaintiff have been forced to incur to prosecute this action under all applicable statutory or contractual bases;

6. For costs of suit incurred herein,

7. For injunctive relief, as the Court may deem proper.

8. For such other, further relief as the Court may deem proper.

Dated: January 27, 2017

STEPHEN F. HENRY, ESQ.

By: _____
STEPHEN F. HENRY
Attorney for Plaintiff

Plaintiff demands trial by jury in this action.

Dated: January 27, 2017

STEPHEN F. HENRY, ESQ.

By: _____
STEPHEN F. HENRY
Attorney for Plaintiff

CASE NO.                           16        COMPLAINT FOR DAMAGES